Mr. Sam Boyce, Chairman Jackson County Election Commission c/o Boyce Law Firm 307 Main Street, Box 38 Newport, Arkansas 72112-0038
Dear Mr. Boyce:
I am writing in response to your request for an opinion on the legality of conducting "early voting" on Sunday. Specifically, you ask "whether or not the county clerk can legally open her office for early voting on Sunday, November 5. . . ." You state that "the clerk has been advised by her civil attorney that it is illegal based upon a provision in the Jackson County Employment Handbook." Your question turns upon a provision in the early voting statute (A.C.A. § 7-5-418 (Repl. 2000)), which refers to early voting being available "during regular office hours." You seek my opinion as to the definition of "regular office hours" under A.C.A. §7-5-418 in light of the Jackson County "Employment Handbook."
RESPONSE
The definition of "regular office hours" for purposes of A.C.A. § 7-5-418
may vary from county clerk to county clerk. You have asked only about Jackson County and its "Employment Handbook."[1] It is my opinion, in light of the relevant Jackson County Code, that "regular office hours" of the county clerk in Jackson County appear to be from 8:00 a.m. to 4:30 p.m. Monday through Friday. If challenged prior to the election, it is my opinion that a court might enjoin early voting outside of such regular office hours in Jackson County.[2] The issue is not entirely clear, however, and could benefit from legislative clarification. After an election, however, case law of the Arkansas Supreme Court indicates that the court will not invalidate votes purportedly cast outside of technical compliance with the statute.
As noted above, the relevant statute is A.C.A. § 7-5-418. It provides in pertinent part as follows:
 (a) Early voting shall be available to any qualified elector who applies to the county clerk during regular office hours, beginning fifteen (15) days before an election and ending on the day before election day at the time the county clerk's office regularly closes.
 (b)(1)(A) In any county containing one hundred fifty thousand (150,000) registered voters or more, the county board of election commissioners may decide to hold early voting at additional polling sites outside the offices of the county clerk and to include the additional voting locations for a maximum of fifteen (15) days but fewer if it so chooses by majority vote.
 (B) The county board of election commissioners shall determine by unanimous vote the location of additional polling sites for early voting.
 (C) The county clerk shall publish the location of additional early voting polling sites in a newspaper of general circulation at least five (5) days before early voting begins.
 (2) The county board of election commissioners shall select the number of election officials necessary to adequately staff the additional early voting polling site or sites as in any other election.
 (3)(A) The county board of election commissioners shall notify the county clerk of its decision to hold early voting at additional polling sites outside the office of the county clerk within ten (10) days of the decision.
 (B) If the county board of election commissioners decides to hold early voting at additional polling sites outside the office of county clerk, the county clerk may choose not to hold early voting within the office of the county clerk. The county clerk shall notify the county board of election commissioners within ten (10) days of the receipt of notice from the county board of election commissioners regarding early voting at additional polling sites.
 (4) The early voting election official shall record the date on all pages of the early voting roster or early voting request form and keep a daily record of the number of early ballots cast.
 (5) (A) The county board of election commissioners may vote to extend the normal hours for voting during early voting.
 (B) The county clerk shall publish the additional hours for early voting with the location of additional early voting polling sites in a newspaper of general circulation at least five (5) days before early voting begins.
* * *
A.C.A. § 7-5-418(a) and (b) (emphasis added).
This statute was originally enacted by identical Acts of 1995 (Nos. 686 and 948). It was amended in 1997 to insert a new subsection, subsection (b) above, with its subdivisions 1 through 5 and to make other changes.See Acts 1997, Nos. 967 and 1092.
It is clear in my opinion that entire subsection (b), including (b)(5)(A), applies only to counties with the requisite number of registered voters (150,000). Each individual subdivision of subsection (b), at least as originally enacted,[3] refers to the additional polling sites authorized only in such counties. In my opinion, therefore, the Jackson County Election Commission may not rely on A.C.A. §7-5-418(b)(5)(A) as authority to extend early voting hours.
The question then turns upon a construction of subsection (a), which states that early voting "shall be available to any qualified elector who applies to the county clerk during regular office hours, beginning fifteen (15) days before an election and ending on the day before election day atthe time the county clerk's office regularly closes." This subsection clearly refers to early voting being "available" during "regular office hours." It doesn't appear to read as a strict prohibition against early voting at other times. It may have been worded in such a way (early voting "shall be available") for the convenience of county clerks, indicating that while they are required to provide early voting access during regular hours on the specified days, they are not required by law to provide access to early voting at other times.[4] This permissive construction is undermined somewhat, however, by the later specific authorization for extended hours in Pulaski County, implicating the legal maxim "expressio unius est exclusio alterious" (the expression of one thing is the exclusion of the other). The proper construction of subsection (a) is therefore not entirely free from doubt, perhaps necessitating legislative clarification.
In any event, the letter of the law authorizes early voting in all counties during "regular office hours." Again, "regular office hours" may vary from county to county. Your question inquires as to the definition of "regular office hours" in Jackson County.
You have enclosed with your request a copy of the "Jackson County Employment Policy and Procedures Handbook," which I assume was adopted by the Jackson County Quorum Court as a part of its Code of Ordinances. See
Jackson County Ordinance 1998-5. Section 5(b) of the Handbook provides in pertinent part that:
 The normal working hours for the administrative offices of the Jackson County Courthouse to transact business are from 8:00 a.m. to 4:30 p.m. Monday through Friday, exclusive of authorized holidays.
* * *
 On special occasions or in unusual circumstances an elected official may determine that personnel are needed to work extra hours in addition to the standard work week. Under those circumstances, they may authorize an extension of the standard work week.
The "normal working hours," for the Jackson County Clerk's office would therefore appear to be from 8:00 a.m. to 4:30 p.m. Monday through Friday absent any facts suggesting otherwise. (In my opinion the words "normal working hours" used in the Handbook are materially indistinguishable from the words "regular office hours" used in A.C.A. § 7-5-418.) Additionally, the fact that the Handbook authorizes a county official to extend the standard workweek on "special occasions" or in "unusual circumstances," does not mean that such special occasions or unusual circumstances are tantamount to the office's "regular office hours" for purposes of A.C.A. § 7-5-418.
In my opinion, therefore, applying the letter of the statute to the facts in Jackson County leads to the conclusion that early voting on Sundays may not be authorized by the statute. This conclusion is reinforced by the long-held maxim that election provisions are mandatory if enforcement is sought prior to the election, but directory after the election. Seee.g. Womack v. Foster, 340 Ark. 124, 8 S.W.3d 854 (2000) and cases cited therein.
If a suit had been filed prior to the November election to enjoin the early voting on Sunday, in my opinion the letter of the statute might have been strictly enforced. After the election, however, courts do not favor disenfranchising a legal voter because of the misconduct of another person, such as an election official. As the court stated in Womack:
 [T]his court has held many times that elections will not be invalidated for alleged wrongs committed unless those wrongs were such as to render the result doubtful. Put in other terms, we have said that the failure to comply with the letter of the law by election officers, especially in matters over which the voter had no control, and in which no fraud is perpetrated, will not as a general rule render an election void, unless the statute expressly makes it so. In sum, the courts do not favor disenfranchising a legal voter because of the misconduct of another person.
340 Ark. at 149, quoting Spires v. Compton, 310 Ark. 431, 434,837 S.W.2d 459 (1992).
Although the court in Womack invalidated absentee ballots after an election due to various technical irregularities, the court was careful to point out that in those instances the voters were not misled by election officials, but themselves improperly filled out the "clear and accurate" absentee application or ballot. Id. at 154. Additionally, although the Womack court required strict compliance with absentee voting requirements, even after the election, the court indicated its agreement with the trial judge's distinction of the applicable standard for absentee ballots, as opposed to early voting, as follows:
 The laws dealing with absentee voting have a very obvious purpose, and they cannot be ignored by the unscrupulous campaign worker, the County Clerk's office, or the Secretary of State. It borders on the absurd for anyone to assume that absentee voting and "early" voting should be governed by the same rules. "Early" voting does nothing more than offer the voter the opportunity to do early what he or she would otherwise do on election day: Go vote in person. It offers no additional opportunity for fraud.
340 Ark. at 160, quoting the Ouachita Circuit Court judgment below.
In my opinion, therefore, early voting on Sunday, November 5 in Jackson County might not have been consistent with law and could possibly have been enjoined prior to the election.[5] Again, however, the prohibitory effect of the statute is not entirely clear in this regard. It is clear, in my opinion, however, that after an election, the courts will not disenfranchise voters for alleged noncompliance with the statute.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] You have not indicated any other facts suggesting that the Jackson County clerk otherwise maintains regular office hours on Sunday.
[2] An exception is made in the statute for counties containing 150,000 or more registered voters. See A.C.A. § 7-5-418 (b)(5)(A) (Repl. 2000). It is my understanding that this exception applies only to Pulaski County.
[3] Act 967 of 1997 contained only a subsection "(b)(5)" and did not split this subsection into (b)(5)(A) and (b)(5)(B) as the codifiers did in the statute.
[4] It is interesting to contrast the language on early voting with that pertaining to absentee voting. Compare A.C.A. § 7-5-403 ("Delivery of the request for an absentee ballot . . . may be made in one of the [listed] ways, and in no other manner. . . ."); and A.C.A. § 7-5-411
("Absentee voting may be accomplished in one (1) of the following methods and in no other manner. . . ."). Emphasis added.
[5] It is my understanding that pursuant to the advice of the county civil attorney, early voting was not held in Jackson County on November 5th.